UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NADINE WITKIN,

      *Plaintiff*,

  -against-

TAMAR WITKIN- MARCUS,

      *Defendant.*

08-CV-1207 (PKC)
ECF Case

**COMPLAINT**

**JURY TRIAL DEMANDED**

Nadine Witkin ("Nadine"), for her complaint against defendant, Tamar Witkin- Marcus ("Tamar"), states:

## BRIEF DESCRIPTION OF THE ACTION

1. This is an action for defamation, slander of title, tortious interference with contract, an accounting based on the exploitation of copyrighted works and unjust enrichment in connection with profits derived from the rental of works of art that were purchased and not paid for.

2. Nadine and her sister Tamar are the daughters of the late, renowned sculptor Isaac Witkin ("Witkin"). Witkin created numerous valuable works of art during his lifetime. Unfortunately, Tamar and Nadine have been engaged in disputes as a result of Tamar's misconduct virtually non-stop since Witkin passed away.

3. Tamar has committed numerous wrongful acts, which are detailed below. These acts form the basis of the claims in this complaint.

**PARTIES, JURISDICTION AND VENUE**

4. Nadine resides in New York, New York, and is a citizen of New York. Along with Tamar, she is a co-executor of Witkin's Estate (the "Estate"). By virtue of an agreement with Tamar, Nadine has the unilateral right to pursue claims on behalf of the Estate.

5. Tamar resides in Milford, Connecticut, and is a citizen of Connecticut.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and because the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Tamar pursuant to N.Y.C.P.L.R. § 302. To the extent the claims in this action sound in contract, Tamar has transacted business with Nadine in New York concerning those contracts, and those contracts were entered into and performed largely in New York. To the extent the claims sound in tort, Tamar has committed tortious acts deliberately with knowledge that they would cause Nadine injury, and has engaged in a persistent course of conduct related thereto. In short, Tamar knew or reasonably should have known that she was subject to personal jurisdiction in New York for her deliberate conduct with respect to Nadine.

8. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and a substantial part of property that is the subject of the action is situated in this District.

## STATEMENT OF FACTS

### BACKGROUND

9. Witkin was a leading 20th Century sculptor who was, according to the many press accounts that followed his untimely death on April 23, 2006, "innovative," "renowned," and a "major force." His works are exhibited in major museums and are highly valued by collectors. Witkin was, as one obituarist also described, a "big man with a big smile and a warm heart . . . exceptionally devoted to his friends and family," especially his daughters, Nadine and Tamar.

10. Unfortunately, since Witkin's death, Tamar has engaged in a scorched earth campaign to destroy Nadine personally and financially.

11. Much of this activity has been taken in connection with the administration of the Estate in the Probate Part, Chancery Division, of the Superior Court of the State of New Jersey, Burlington County, Docket No. 2006-0940 (the "Probate Matter"). The claims in this action, however, lie far outside the limited subject matter jurisdiction of a probate or surrogate's court.

### TAMAR'S DEFAMATION OF NADINE AND SLANDER OF TITLE TO NADINE'S SCULPTURES

12. Nadine is the owner of certain sculptures that were created by Witkin and given to her by Witkin by written deeds of gift executed by him prior to his death ("Nadine's Deeded Sculptures").

13. Nadine is also the owner of other sculptures created by Witkin that were given to her by Witkin by means of oral gifts witnessed by other persons ("Nadine's Gifted

Sculptures") (together, "Nadine's Deeded Sculptures" and "Nadine's Gifted Sculptures" are "Nadine's Sculptures").

14. Because Witkin gave Nadine's Sculptures to her prior to his death, they were never part of the Estate.

15. Beginning in or about January 2007, and continuing through the present, in a malicious effort to claim ownership of Nadine's Deeded Sculptures, Tamar has told numerous people that Nadine forged her father's name on deeds of gift and that she is unlawfully holding and claiming ownership of sculpture created by her father. These statements are utterly false, are known by Tamar to be false, and have caused Nadine grave financial and emotional harm.

16. In a malicious effort to claim ownership of Nadine's Gifted Sculptures, Tamar has told numerous people that Witkin never gave Nadine's Gifted Sculptures to Nadine, and that she is unlawfully holding and claiming ownership of sculpture created by her father. These statements are utterly false, are known by Tamar to be false, and have caused Nadine grave financial and emotional harm.

17. Tamar, directly or through intermediaries, has falsely leveled such accusations at Nadine, orally or in writing, of forging Witkin's signature and otherwise unlawfully possessing Nadine's Sculptures, to at least the following people:

- Nadine's and Tamar's mother and her husband (Nadine and Tamar's stepfather), Bob Johnson;
- Nadine's and Tamar's stepsister, Carrie Kay Johnson, and her husband;
- Nadine's and Tamar's uncle, Jacob Witkin (Witkin's brother);
- Nadine's and Tamar's cousin, Orson Witkin (Jacob Witkin's son);
- Nadine's and Tamar's cousin, Robert Witkin;

- Nadine's and Tamar's cousin, Olivia, and Olivia's husband, Ken Wayne;

- Tamar's husband, Steven Marcus, her father-in-law, Artie Ripp, and other relatives of Steven Marcus;

- Andrew Logan, a former business colleague of Witkin;

- Harry Gordon, a former business colleague of Witkin;

- Ricardo Barros, a photographer of many of Witkin's sculptures;

## TAMAR'S UNJUST ENRICHMENT FROM, AND DUTY TO ACCOUNT FOR, THE EXPLOITATION OF JOINTLY OWNED COPYRIGHTED WORKS

18. As the two beneficiaries of the Estate, Tamar and Nadine are the joint owners of the copyrights in the relevant works. These include the visual images of Witkin's sculptures and his personal diaries (the "Works").

19. Tamar has exploited these works in a variety of ways. These include the creation of a film titled "Pieces of Isaac." In a solicitation for investments in the film published on the internet, Tamar stated:

> On April 23, 2006, renowned abstract sculptor, Isaac Witkin, died. His once very public career had wound down and his personal relationship had ended the year prior to his death. The day after Isaac's journey ended, his daughter Tamari's began. "Pieces of Isaac" is the story of a woman's struggle to weld together the scattered pieces of her father, to form a three-dimensional portrait of the artist, the husband, the father, to look directly into both the bright and dark sides of genius. Her goal is to make her peace with the whole man, thus allowing her to forgive him, to move on and to become whole herself. It is the tale of an unconventional artist- and often intemperate man-- whose talent and determination brought him to the heights of the art world, but whose hubris tore his family and career apart. The film pushes beyond the myths created by Witkin's admirers to reclaim the complete person. Using Witkin's own diaries and reflections on his sculptures, footage of the artist at work as well as intimate interviews with art luminaries, family, friends, ex-lovers, collectors and critics, "Pieces of Isaac" brings fresh insights into genius on both the personal

and universal levels, how it touches the world, and how it affects those closest to it.

20. In other words, Tamar admits that she is exploiting the Works for purposes of financial gain. In fact, she has solicited funds from numerous sources.

21. To make matters worse, Tamar has demonstrated that she is willing to stop at nothing, including trashing the legacy of her own father, to make money and reap publicity for herself.

22. As a joint copyright owner, Tamar is under a duty to account for the revenues generated by the Works. Tamar has failed to do so, despite having received written demands from Nadine and her attorneys.

## FIRST CLAIM FOR RELIEF
### (Defamation)

23. Nadine repeats and realleges the allegations in Paragraphs 1 through 22 of this Complaint.

24. Beginning in or about January 2007, Tamar publicly stated to, among others, the persons identified above, that Nadine is: (a) a forger who is claiming ownership of Nadine's Deeded Sculptures by forging her father's signatures (b) a liar and a thief who is falsely claiming ownership of Nadine's Gifted Sculptures.

25. These statements were defamatory *per se* because they tend to expose Nadine to public hatred, shame, obloquy, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or to induce an evil opinion of her in the minds of right-thinking persons and to deprive her of their confidence and friendly intercourse in society.

26. Tamar published her statements maliciously and with either the express intent of harming Nadine or a reckless disregard of the likelihood of doing so.

27.     Because the statements alleged in this Complaint are defamatory *per se*, there is no requirement that Nadine and prove special damages.  Nevertheless, Nadine has suffered special damages: (a) due to the inability to properly sell or market Nadine's Sculptures because of the cloud that Tamar has cast over their title; (b) because Nadine was forced for financial reasons to sell some of these Sculptures to Tamar at fire sale prices; and (c) through attorneys' fees and other costs incurred as a direct result of Tamar's defamatory statements. [1]

## SECOND CLAIM FOR RELIEF
## (Slander of Title)

28.     Nadine repeats and realleges the allegations in Paragraphs 1 through 27 of this Complaint.

29.     Tamar's actions described above with respect to Nadine's Sculptures have cast doubt on Nadine's title to Nadine's Sculptures

30.     Tamar's statements concerning Nadine's Sculptures were false, and were made with actual knowledge of their falsity or with reckless disregard to their truth or falsity, and are not covered by any applicable legal privilege.

31.     As a result of Tamar's statements, the value of, and Nadine's rights in, the Nadine's Sculptures, have been adversely affected.

32.     Nadine has suffered special damages consisting of her inability to market and sell Nadine's Sculptures, which are worth in excess of $80,000.

## THIRD CLAIM FOR RELIEF
## (Tortious Interference With Contract)

33.     Nadine repeats and realleges the allegations in Paragraphs 1 through 32 of this Complaint.

---

[1] Compounding Nadine's damages, Tamar has not paid for these Sculptures even though she has possession of them, and is earning income through having lent at least two of them to third parties in exchange for substantial revenue.

34. By agreement with Tamar, Nadine has ownership of claims against third parties that formerly belonged to the Estate.

35. Among these claims is one against, Ricardo Barros, a photographer ("Barros"), for unlawful possession of a Witkin sculpture that belongs to the Estate.

36. Nadine reached an agreement with Barros pursuant to which Barros would return the sculpture, ultimately, and consistent with Nadine's agreement with Tamar, to Nadine. But, motivated by a desire to harm Nadine, and with full knowledge of the Nadine's agreement with Barros, Tamar has, directly or through agents, caused Barros to breach that agreement by subsequently refusing to return the sculpture. Tamar's tortious acts included defaming Nadine to Barros, as alleged above.

37. Nadine has been damaged by this interference in an amount to be proved at trial.

## FOURTH CLAIM FOR RELIEF
### (Accounting/Unjust Enrichment)

38. Nadine repeats and realleges the allegations in Paragraphs 1 through 37 of this Complaint.

39. As joint copyright owners of the Works, Nadine and Tamar each have the duty to account to each other for, and remit 50% of, the revenues from the exploitation of the Works.

40. Tamar has exploited the Works for financial gain, but has neither accounted for nor remitted any portion of the monies she has received as a result of that exploitation.

41. Similarly, Tamar took possession of, and later rented, sculptures sold to her by Nadine but did not pay for them. By virtue of doing so, Tamar was unjustly enriched.

42. Nadine has been damages as a result of Tamar's actions.

## DEMAND FOR RELIEF

**WHEREFORE,** Nadine demands judgment as follows:

A. Directing Tamar to pay Nadine compensatory and (on the First through Third claims, punitive damages in an amount to be proved at trial (but in no event less than $1,000,000);

B. Directing Tamar to account for the revenues accruing from her exploitation of the Works;

C. Awarding Nadine costs, disbursements, and the reasonable attorneys' fees he has incurred in connection with this action;

D. Granting Nadine such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Nadine demands a trial by jury.

Dated: New York, New York
February 5, 2008

Respectfully submitted,

LYNN & CAHILL LLP

By: s/ John R. Cahill
John R. Cahill (JC-4229)
Ronald W. Adelman (RA-8633)

500 Fifth Avenue, 14th Floor
New York, NY 10110
(212) 719-4400
*Attorney for Plaintiff Nadine Witkin*